UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREW ROBERT NEWBERRY,

                          Plaintiff,

v.                                                                            1:14-CV-0880

                                                                                      (TJM/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS
*Counsel for Plaintiff*                            PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, New York 12414

HON. RICHARD S. HARTUNIAN           EMILY M. FISHMAN, ESQ.
United States Attorney for the            Special Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL
Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

     This matter was referred to the undersigned for report and recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in

accordance with General Order 18 of this Court, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently fifty years old. (Administrative Transcript, "T". at 41.[1]) He has a high school diploma and has completed two years of vocational training in a welding machine shop. (T. at 12, 53.) He has a driver's license and has worked as a driver, done maintenance in a grocery store, and worked at a welding shop. (T. at 13, 55, 152.) Plaintiff alleges disability due to diabetes mellitus, hypertension, obesity and bipolar disorder. (T. at 34.)

Plaintiff first applied for disability insurance benefits and Supplemental Security Income ("SSI") on December 13, 2006, alleging disability as of March 28, 1991. (T. at 67.) The application was denied on April 16, 2007. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 26, 2009. *Id*. On March 6, 2009, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 64.)

Plaintiff again applied for disability insurance benefits and SSI on September 22, 2011,[2] alleging disability as of March 28, 1991. (T. at 32, 130.) The application was initially denied on January 27, 2012. *Id.* Plaintiff requested a hearing before an ALJ, which was held on January

---

[1] The Administrative Transcript is found at Dkt. No. 8. Page numbers in citations to the Administrative Transcript refer to the Bates stamped page numbers on the bottom right of the original document rather than to the page numbers assigned by the Court's electronic filing system.

[2] The ALJ refers to this date as September 15, 2011. (T. at 32.)

22, 2013. *Id*. On February 21, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 29.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 16, 2014. (T. at 1-3.) Plaintiff commenced this action on July 17, 2014. (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

3

> equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42

4

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[3] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

**III.    THE ALJ'S DECISION**

Here, the ALJ found that Plaintiff was not disabled at step five of the five-step analysis. (T. at 41-42.) The ALJ found that Plaintiff's severe impairments included diabetes mellitus, hypertension, obesity, and bipolar disorder. (T. at 34.) The ALJ further found that none of the impairments met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

At step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but with the following limitations: he is limited to performing unskilled work with only occasional decision making, changes in work setting or interaction with co-workers and no interaction with the public, as any other work might exacerbate his symptoms. (T. at 36, 39.)

The ALJ then proceeded to step five after finding that Plaintiff had no past relevant work. (T. at 41.) He found that Plaintiff was forty-five years old, which is defined as a younger individual age eighteen to forty-nine, on the date the application was filed in 2011. *Id.* He also found Plaintiff had at least a high school education and was able to communicate in English. *Id.* The ALJ did not discuss transferability of job skills as Plaintiff had no past relevant work. *Id.* The ALJ then determined that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For example, the ALJ found that Plaintiff could perform the requirements of "representative occupations" such as racker, electrode cleaner and routing clerk. *Id.*

**IV.    THE PARTIES' CONTENTIONS**

Plaintiff claims that the ALJ did not precisely describe the opinion of Plaintiff's treating

physician, Dr. Jaeger, and therefore did not consider her opinion accurately, that the ALJ erred by failing to accord adequate weight to Dr. Jaeger's opinion, and that the ALJ had a duty to re-contact Dr. Jaeger when he found her assessments "unclear." (Dkt. No. 9 at 1-4.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 10 at 14.)

## V. DISCUSSION

Plaintiff's arguments all involve the opinion of Dr. Jaeger, Plaintiff's treating physician. On August 21, 2012, Dr. Jaeger completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (T. at 325.) She opined that Plaintiff could lift and carry up to twenty pounds occasionally; sit for an entire eight-hour work day; stand for three hours total and one hour at a time; and walk for two hours total and one hour at a time. (T. at 325-26.) Further, she stated that Plaintiff could use his hands and feet continuously but found that Plaintiff could climb stairs and ramps only occasionally, and could never climb ladders or scaffolds, balance, stoop, kneel, crawl or crouch. (T. at 327-28.) In all instances, when asked to describe the particular medical or clinical findings to support her assessment, she stated only: "limited by obesity" and "morbid obesity." *Id.* Dr. Jaeger also identified various environmental limitations, but gave no explanation when asked to identify the particular medical or clinical findings to support her conclusions. (T. at 329.) Finally, Dr. Jaeger stated that Plaintiff was able to shop, travel alone, walk without any assistive device, use public transportation, climb a few steps at a reasonable pace, prepare simple meals, care for his personal hygiene, and sort, handle, and use paper files. (T. at 330.)

In describing Plaintiff's physical capabilities, the ALJ inaccurately described Dr. Jaeger's

7

opinion, stating that she found that Plaintiff was capable of lifting twenty pounds "continuously" as opposed to "occasionally" and could stand four hours as opposed to three. (T. at 39.) The ALJ also rejected Dr. Jaeger's findings regarding Plaintiff's ability to stand, walk, climb, perform postural activities, and tolerate environmental hazards as he found that they were "not well supported by objective medical evidence." (T. at 40.) The ALJ found that the medical record did not contain findings of impairments which were so advanced that they could reasonably be expected to produce the disabling symptoms and RFC assessment set forth by Dr. Jaeger. (T. at 38.) The ALJ noted that although Dr. Jaeger's treatment records consistently indicated elevated blood pressure readings, Dr. Jaeger did not note any other cardiac complications resulting from Plaintiff's hypertension. *Id.* Furthermore, there was no mention in the record of complications like diabetic neuropathy or kidney involvement that could potentially result from Plaintiff's diabetes mellitus. *Id.* The ALJ acknowledged that Plaintiff's obesity would contribute to his hypertension and diabetes mellitus "without evidence of any other complications or manifestations." *Id.* The ALJ also found that with respect to Plaintiff's physical impairments, the only symptom recorded by Dr. Jaeger was "shortness of breath with exertion" and opined that if Plaintiff had more advanced symptoms resulting from his impairments, he would have reported them to Dr. Jaeger. *Id.*

Plaintiff claims that the ALJ did not precisely describe Dr. Jaeger's opinion and therefore did not consider her opinion accurately, that the ALJ erred by failing to accord adequate weight to Dr. Jaeger's opinion, and that the ALJ had a duty to re-contact Dr. Jaeger when he found her assessments "unclear." (Dkt. No. 9 at 1-4.)

### A. The ALJ did not err in according Dr. Jaeger's opinion "little weight" because her opinion was unsupported by the record.

The ALJ accorded "little weight" to the opinion of Plaintiff's treating physician, Dr. Jaeger. (T. at 40.) Plaintiff argues that the ALJ erred by not giving Dr. Jaeger's opinion controlling weight. (Dkt. No. 9 at 3.) For the reasons discussed below, I find that the ALJ applied the correct legal standards and that substantial evidence supports his decision.

Though the medical opinions of a claimant's treating physician are generally given controlling weight as opposed to the opinions of other medical professionals, this is only "[i]f . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2)(2012). Medically acceptable techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(i)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating

9

physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.; see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6) (2012). This includes a requirement that the ALJ attempt to fill any clear gaps in the administrative record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Filling a gap in the record may include requesting that the treating physician supplement his findings with additional information. *Id.* at 80 (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were inconsistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ( "When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). *See also* 20 C.F.R. § 416.927(c)(3)-(4) ("the more a medical source presents

relevant evidence to support an opinion," the more weight will be given to that opinion and "[G]enerally, the more consistent an opinion is with the record as a whole, the more weight [will be given] to that opinion"); *Petri v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d. Cir. 1983) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence"). A claimant's testimony regarding his daily activities, in conjunction with the record as a whole, can serve as substantial evidence to support an ALJ's finding of not disabled. *See* 20 C.F.R. § 404.1527(c)(3)(i) (noting that daily activities are used in assessing allegations of disability); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2009) (finding that the plaintiff's Daily Activities Questionnaire constituted evidence in support of the ALJ's RFC finding for light work); *Poupore v. Astrue*, 533 F.3d 303, 307 (2d Cir. 2009) (noting that activities such as vacuuming, washing dishes, driving, watching television, and using the computer constituted substantial evidence for an RFC finding for light work).

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2) (2012). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999); *Halloran,* 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

Upon completing the Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Jaeger gave no explanation for her assessed limitations of Plaintiff's abilities other than noting that Plaintiff was "obese." (T. at 326, 328.) The ALJ took this into consideration in his evaluation by noting that while Plaintiff's obesity "would contribute to his hypertension and diabetes mellitus" there was no evidence given by Dr. Jaeger or in the record to support the restrictive view of Plaintiff's abilities as found by Dr. Jaeger. (T. at 38.) For example, on September 15, 2011, Plaintiff received a routine check-up by Dr. Jaeger and reported that he "felt generally well" and had "no complaints." (T. at 196.) Plaintiff also denied any chest pain or discomfort, fevers and chills or cough. *Id.* His physical examination was completely normal except for a note of high blood pressure and obesity. (T. at 197.) There was no evidence that Plaintiff's obesity prevented him from moving about, as there were no abnormalities of the extremities and Plaintiff had normal, full range of motion of all joints. *Id.* In subsequent appointments with Dr. Jaeger and other doctors at Mid-Hudson Medical Group, Plaintiff denied any physical complaints and prior examination findings remained unchanged. (T. at 272-92, 300-05, 333-36.) Further, Plaintiff admitted to exercising two times per week in the form of walking on April 23, 2012, in a check-up with Dr. Jaeger; subsequent visits demonstrated that Plaintiff himself did not feel he was limited and was in fact not physically limited by his obesity. (T. at 278, 283, 287, 290.) All of the aforementioned facts demonstrate that Dr. Jaeger's own treatment notes did not support the physical restrictions she indicated for Plaintiff due to his obesity. Again, there was no indication that Plaintiff's obesity caused any complications or problems related to physical movement. (T. at 38-40.) As noted by the ALJ, Plaintiff himself never complained of such complications to Dr. Jaeger or any of the other health

practitioners at Mid-Hudson Medical Group. *Id.*

Moreover, Dr. Jaeger's assessment was also contradicted by the results of Plaintiff's consultative examinations. Dr. Kautilya Puri performed a consultative medical examination at the Commissioner's request on January 20, 2012. (T. at 261-64.) Unlike Dr. Jaeger, Dr. Puri found far less restrictive limitations. (T. at 39-40.) He recommended that Plaintiff not carry out "strenuous activity," but listed no limitations with regard to gait and activities of daily living. (T. at 39.) Contrary to Dr. Jaeger's assessment (who found that Plaintiff was limited in his ability to stand and walk), Dr. Puri found that Plaintiff had no limitations regarding his gait. (T. at 263.) Further, Dr. Jaeger asserted that Plaintiff could never engage in most postural activities, while Dr. Puri found only mild limitations with respect to Plaintiff's ability to squat, bend, stoop and kneel. (T. at 39, 263, 328.) Dr. Puri also noted that Plaintiff was able to change for the examination and get on and off the table without help and was able to "rise from [a] chair without difficulty." (T. at 262.) However, Dr. Puri noted a generalized decreased range of motion in Plaintiff's lumbar spine and mild generalized range of motion in his hips, knees and ankles secondary to obesity. (T. at 39, 263.) He also noted decreased ankle jerks and vibratory sensations in Plaintiff's feet. *Id.* Despite these findings, Dr. Puri found that Plaintiff's cervical and thoracic spine were normal; a straight leg raising test was negative; Plaintiff had full range of motion in his elbows, forearms, and wrists; and all of Plaintiff's joints were stable and non-tender, with no redness, heat, swelling or effusion. *Id.* Dr. Puri also found that Plaintiff's ability to stand and walk were not impaired as result of his obesity, that his gait and stance were normal, and he used no assistive devices. (T. at 39, 262.) Dr. Puri integrated these findings into his assessment of Plaintiff's functional limitations and, unlike Dr. Jaeger, only recommended that

13

Plaintiff not carry out "strenuous activity" but had no limitations with respect to gait and activities of daily living. (T. at 39, 263.)

Finally, Plaintiff's testimony regarding his activities of daily living support the ALJ's decision to discount Dr. Jaeger's opinion. At the oral hearing, Plaintiff stated he fed his pets, drove his mother and brother to different places (totaling around ninety miles per week), cooked, cleaned, and did laundry. (T. at 37, 58-9.) He also said he mowed the lawn and helped his mother with other yard work, which conflicts with Dr. Jaeger's assessment that Plaintiff could never bend or stoop and supports the finding that Plaintiff could perform light work. (T. at 36-7, 58-9, 328.) Further, Plaintiff told consultative examiner Dr. Puri that he cooked, cleaned, did laundry, and showered and dressed independently; he also told consultative psychologist Dr. Mark Weinberger that he dressed, bathed and groomed independently, cooked and prepared food, cleaned, did laundry, managed money, spent his days driving his mother around and doing chores around the house. (T. at 38, 235, 261.) Dr. Jaeger's treatment notes also indicate that Plaintiff could perform a wide range of daily activities. (T. at 330.) For example, she noted that Plaintiff could care for his personal hygiene, shop, travel independently, use public transportation, walk without any assistive device, and prepare simple meals. *Id.* All of the foregoing contradict Dr. Jaeger's limited assessment of Plaintiff's physical capabilities and support the ALJ's finding that Plaintiff could perform light work. (T. at 40.)

The ALJ properly evaluated all of the medical evidence, including the opinion of Plaintiff's treating physician, and properly relied on and gave more weight to Dr. Puri's assessment as his assessment was consistent with the medical record as a whole. Dr. Jaeger's assessments of Plaintiff's physical capabilities were contradicted by the record as a whole. The

ALJ acknowledged that Dr. Puri diagnosed Plaintiff as morbidly obese and took his assessments of Plaintiff's limitations into account when determining Plaintiff's limitations. (T. at 39, 262-63.) He did not err in according little weight to the opinion of Dr. Jaeger as her opinion is unsupported by objective medical evidence, Plaintiff's testimony, and the medical evidence in the record. As such, the ALJ gave "good reasons" to support his decision to discount portions of Dr. Jaeger's opinion.

      **B.    Although the ALJ did not accurately describe Dr. Jaeger's opinion, any error was harmless.**

Dr. Jaeger asserted that Plaintiff could lift and carry up to twenty pounds "occasionally" and could stand for three hours. (T. at 325-26.) The ALJ stated that Dr. Jaeger opined that Plaintiff could lift and carry up to twenty pounds "continuously" and stand for four hours. (T. at 39.) Plaintiff argues that the ALJ did not precisely describe the opinion of Plaintiff's treating physician and therefore did not consider the opinion accurately. (Dkt. No. 9 at 3.) Defendant argues that even if the ALJ misstated portions of Dr. Jaeger's opinion, such misstatements are "harmless" and have no bearing on the overall outcome of the case. (Dkt. 10 at 6.) For the reasons discussed below, I find that the ALJ's mistake was "harmless" and it would not have changed the outcome of the case.

The ALJ overstated what Dr. Jaeger thought Plaintiff could do. Even with this overstatement, the ALJ concluded that Dr. Jaeger's opinion was not supported by the record or objective medical evidence. As discussed above, that decision employed the correct legal standards and was supported by substantial evidence. Although the ALJ overstated what Dr. Jaeger thought Plaintiff could do, any error in this respect was harmless as it would not have

15

changed the outcome of the case. The ALJ would have rejected her opinion even if he had accurately stated it because he correctly concluded that her assessments of Plaintiff's physical capabilities were not well supported by the record. For this reason, the ALJ's error was harmless and would not have changed the outcome of the case. *See Reices-Colon v. Astrue,* 523 F. App'x 796, 798 (2d Cir. 2013) (finding that the ALJ's failure to include plaintiff's anxiety and panic disorders in his evaluation at step two constituted harmless error as their inclusion would not have changed the outcome of the case).

> **C. The ALJ was not required to re-contact Dr. Jaeger because substantial evidence supported his decision, he possessed Plaintiff's complete medical history, and there were no obvious gaps in the record.**

In his decision, the ALJ noted that:

> Dr. Jaeger reported little in the way of clinical findings of her own to support the limitations which she recommended, which she simply attributed to obesity, but it is unclear how obesity, in and of itself, would lead to the limitations which she described.

(T. at 40.) Plaintiff argues that the ALJ had a duty to re-contact Dr. Jaeger when he found her opinion "unclear." (Dkt. No. 9 at 4.) For the reasons discussed below, I find that the ALJ was not required to re-contact Dr. Jaeger.

When the available evidence in the record is adequate to make a disability determination and there are no obvious gaps or evidentiary deficiencies, the ALJ has no duty to obtain more information from a claimant's treating physician if he finds her assessments "unclear." *See Rosa v. Callahan,* 168 F.3d 72, 79 (noting that the ALJ has an affirmative duty to seek additional information only when there are obvious gaps in the administrative record and when the ALJ does not possess a 'complete medical history' (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.

16

1996))).

In this case, the ALJ had Plaintiff's complete medical records, including all of Dr. Jaeger's treatment notes and notes made by other treating physicians at Mid-Hudson Medical Group. Furthermore, the record contained Dr. Puri's examination and findings, as well as Plaintiff's own admissions regarding his activities of daily living to consultative examiners and at two oral hearings. As such, there were no obvious gaps or deficiencies in the record such that the ALJ had a duty to re-contact Dr. Jaeger for more information, and further, substantial evidence supports the ALJ's RFC finding and ultimate decision of denial of benefits.

## VI. CONCLUSION

Based on the above, I find the ALJ applied the correct legal standards and his opinion is supported by substantial evidence and should thus be affirmed. Although the ALJ overstated what Dr. Jaeger thought Plaintiff could do, any error in this respect was harmless as it would not have changed the outcome of the case. The ALJ would have rejected her opinion even if he had accurately stated it because he correctly concluded that her assessments of Plaintiff's physical capabilities were not well supported by the record. The ALJ also gave "good reasons" for according little weight to Dr. Jaeger's opinion as her opinion conflicted with the record as a whole, Plaintiff's testimony, and her own findings set forth in her treatment notes. (T. at 330.) As such, the ALJ properly discounted portions of her opinion. Furthermore, because there were no obvious gaps or deficiencies in the record, the ALJ had no duty to re-contact Dr. Jaeger for clarification of her opinion.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's

motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: June 19, 2015
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge